**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**STEPHANIE N. PAULINO**,
**Individually and as Class Representative,**

     Plaintiff,

**v.**                                                                 **CIVIL ACTION NO. 3:12-CV-75**
                                                                       **(JUDGE GROH)**

**DOLLAR GENERAL CORPORATION,**
**a foreign corporation, and DOLGENCORP,**
**LLC, a foreign corporation,**

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND AWARDING REASONABLE EXPENSES AND OVERRULING DEFENDANTS' OBJECTIONS

### I. Introduction

Pending before this Court are Defendants' Objections to Judge Seibert's Original Order and Amended Order Granting Plaintiff's Motion to Compel and Awarding Reasonable Expenses.  On February 22, 2013, Defendants filed their objections to Magistrate Judge Seibert's Order and Amended Order.  On March 11, 2013, Plaintiff filed her responses to Defendants' objections.  On March 21, 2013, Defendants filed their reply.  On April 19, 2013, the Court held a hearing to permit oral argument on the issues before the Court.  Plaintiff appeared by counsel, David M. Hammer.  Defendants were represented by counsel, Joel S. Allen and Larry J. Rector.  Upon consideration of the written and oral arguments of counsel and for the following reasons, the Court **GRANTS** Plaintiff's Motion to Compel, **OVERRULES** Defendants' objections to

1

Magistrate Judge Seibert's Order and Amended Order, and **AWARDS** reasonable expenses.

## II. Factual Background and Procedural History

On July 10, 2012, Plaintiff, Stephanie Paulino, filed her complaint in the Circuit Court of Berkeley County, West Virginia alleging that Defendants, Dollar General Corporation and DolGenCorp, LLC, violated the West Virginia Wage Payment and Collection Act (WPCA), W. Va. Code § 21-5-4, when they failed to pay Plaintiff her wages in full within seventy-two hours of her termination. Plaintiff also alleges that Defendants did not pay her liquidated damages and interest, as required by the statute when a business does not comply with any rule under the WPCA, such as the seventy-two hour rule. Plaintiff asserts this claim on behalf of herself and all other former employees who were terminated within five years of the filing of suit and not timely paid, or, in the alternative, not paid the liquidated damages and interest as required by the WPCA.

On August 15, 2012, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1332(d), which gives the federal courts original jurisdiction over a class action when: (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A); (2) "the number of members of all proposed plaintiff classes in the aggregate is less than 100," 28 U.S.C. § 1332(d)(5)(B), and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(1). Defendants submitted the Declarations of two of its employees to establish the amount in controversy. Those Declarations, "based upon

2

personal knowledge of facts stated herein and the personnel records that are made, maintained and stored by Dollar General in the ordinary course of business," stated during the relevant time period there had been 7,357 employment terminations[1] and that average check dollar amount during the applicable period was $286.11.[2]

On October 23, 2012, Plaintiff proceeded to serve her first set of discovery requests.  After she deemed Defendants' responses deficient, and after meeting and conferring in good faith to work out the deficiencies, Plaintiff filed the instant motion to compel.  Plaintiff's motion to compel was referred to Magistrate Judge Seibert by this Court.  Defendants filed a response to the motion to compel on January 16, 2013. Judge Seibert held an evidentiary hearing and argument on January 18, 2013.

On January 22, 2013, Judge Seibert issued his Original Order denying three of the twelve document requests that Plaintiff moved to compel–Request Numbers 4, 13, and 14.  The Original Order stated that the "proper scope for discovery at this point would be only those employees involuntarily terminated in West Virginia in the past five years."  Therefore, the Original Order denied Request Numbers 4, 13, and 14 because they sought production of documents relating to employees voluntarily terminated.

On January 29, 2013, Defendants filed an emergency motion for clarification regarding Judge Seibert's order granting Plaintiff's motion to compel on Request Number 5 which requested "[f]or each former employee who was employed during the Period produce records concerning whether that employee voluntarily left employment

---

[1]Declaration of Terry McSorely.

[2]Declaration of Georgia Hannon.

3

or involuntarily left employment."  On January 30, 2013, Judge Seibert issued an order
stating he fully intended to grant Plaintiff's motion to compel Request Number 5.
Defendants argued that the request asks whether employees were voluntarily or
involuntarily terminated, therefore it falls outside the scope of discovery.  However,
Judge Seibert stated it was "Defendants' disingenuous position that Plaintiff voluntarily
terminated her position that led the Court to grant the request."[3]

On January 30, 2013, this Court granted Defendants' motion for a partial and
temporary stay of Judge Seibert's Original Order.  On February 5, 2013, Defendants
filed their objections to Judge Seibert's Original Order granting in part and denying in
part Plaintiff's motion to compel and awarding reasonable expenses.  Also on February
5, 2013, Judge Seibert conducted a hearing on the issue of the award of reasonable
expenses, including attorneys' fees and sanctions.  Following the hearing, on February
8, 2013, Judge Seibert entered an Amended Order granting Plaintiff's Motion to Compel
in its entirety and awarding reasonable expenses due to Defendants' position that
Plaintiff was *voluntarily* terminated.  Judge Seibert declined to impose sanctions.

On February 19, 2013, this Court granted the parties' joint motion for a
consolidated briefing schedule.  This Court ordered that Defendants' objections to the
Amended Order include argument responsive to Judge Seibert's Amended Order and
Original Order.  Then, Plaintiff was ordered to respond only to Defendants' objections to
the Amended Order.  On February 21, 2013, the Court granted Defendants' motion for a
partial and temporary stay of Judge Seibert's Amended Order.

---

[3]*See* Defendants' answer to Interrogatory 25, Doc. No. 32, Ex. 2.

On February 22, 2013, Defendants filed their objections to Judge Seibert's Amended and Original Order.  On March 11, 2013, Plaintiff filed her response.  On March 21, 2013, Defendants filed their reply.  On April 19, 2013, the Court held a hearing to permit oral argument on the matter.  Therefore, this issue has been fully briefed and argued, and it is ripe for this Court's review.

### III. Standard of Review

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters, such as discovery orders.  **FED. R. CIV. P. 72(a)**; *see* **28 U.S.C. § 636(b)(1)(A)**.  As a non-dispositive matter, the review of a magistrate judge's discovery order is governed by the "clearly erroneous" or "contrary to law" standard of review.  *Id.*

Only if a magistrate judge's decision is "clearly erroneous or contrary to law" may a district court judge modify or set aside any portion of the decision.  **FED. R. CIV. P. 72(a)**; *see* **28 U.S.C. § 636(b)(1)(A)**.  A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  ***United States v. United States Gypsum Co.***, 333 U.S. 364, 395, 68 S. Ct. 525 (1948); *see also* ***Harman v. Levin***, 772 F.2d 1150, 1152 (4th Cir. 1985).  "In light of the broad discretion given to a magistrate judge in the resolution of nondispositive discovery disputes, the court should only overrule a magistrate judge's determination if this discretion is abused."  ***Shoop v. Hott***, 2010 WL 5067567, *2 (N.D.W. Va. Dec. 6, 2010) (citing ***Detection Sys., Inc. v. Pittway Corp.***, 96 F.R.D. 152, 154 (W.D.N.Y. 1982)).

## IV.  Analysis

### A.     Scope of Discovery

Unless limited by a court order, parties in civil litigation enjoy broad discovery as detailed in Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who knows of any discoverable matter . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

**FED. R. CIV. P. 26(b)(1)**.  "[T]he discovery rules are given 'a broad and liberal treatment.'" **Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.**, 967 F.2d 908, 983 (4th Cir. 1992) (quoting **Hickman v. Taylor**, 329 U.S. 495, 507, 67 S. Ct. 385, 391-92 (1947)).  The discovery sought must be "relevant"; however, it need not be admissible at the trial if the discovery appears reasonably calculated to lead to admissible evidence. **FED. R. CIV. P. 26(b)(1)**.  To be "relevant information," the information sought must be "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in the case." **Hickman**, 329 U.S. at 501.

A crucial issue, hotly contested by the parties, is whether the Court's Scheduling Order limited the scope of discovery.  For the reasons that follow, the Court's Scheduling Order clearly did not limit or bifurcate discovery.  Instead, the Court's Scheduling Order applied to *all discovery* and set a deadline for discovery completion for *all discovery*.  On August 21, 2012, the Court issued its "First Order and Notice

Regarding Discovery and Scheduling Conference" [Doc. 4].  The parties were ordered to have their initial planning meeting on or before September 21, 2012.  The parties were also ordered to submit their 26(f) meeting report to the Court on or before October 5, 2012.  The parties submitted their Rule 26(f) report on October 5, 2012.  The parties' 26(f) report stated that

> Plaintiff's position is that all discovery should be commenced in time is to be completed by July 19, 2013.  Defendants' position is that an initial phase of discovery limited to issues relevant to class certification should be completed and class certification ruled upon by the Court prior to any determination of a final deadline for all discovery related to the merits of the action.

[Doc. 15].  The parties also submitted a scheduling order checklist with proposed dates for the Court's scheduling order.  In the parties' submitted Scheduling Order Checklist, Defendants argued that "the corresponding dates for scheduling of merits discovery, dispositive motions, pre-trial and trial deadlines should <u>not</u> be set at this time and should instead be set after the Court's determination of whether the standards for certification of that matter as a class action have been met." [Doc. 16].  Defendants also suggested that the Court's Scheduling Order adopt a bifurcated class and merits discovery schedule, and for the Court to replace the deadline for dispositive motions to state "Class Certification Motions."

Defendants also filed an Addendum to "Scheduling Order" Checklist where the Defendants proposed the following:

> that the "checklist" instead provide a bifurcated schedule for limited "Phase I" discovery where the proposed dates for "expert disclosures," "discovery" and "motions" are established as the "Phase I" dates for experts, discovery and motions limited to class certification issues. Alternatively, Defendants propose that if a more accelerated schedule is preferred by the Court, then Phase I discovery should end on or after

7

> March 2013 rather than setting a non-bifurcated discovery schedule.
> Upon determination of all class certification issues, Defendants propose
> that the parties and the Court would thereafter confer upon a Phase II
> merits discovery, pretrial and trial schedule.

[Doc. 17].

On October 18, 2012, the Court issued its Scheduling Order without any limit on the scope of discovery.  The Scheduling Order adopted all dates proposed in the Scheduling Order Checklist, with the exception of moving the proposed final pretrial conference date from October 25, 2013 to November 1, 2013.  Therefore, the Court's Scheduling Order contained deadlines for discovery completion, motion practice/dispositive motions, Federal Rule 26(a)(3) disclosures, voir dire, jury instructions, verdict forms, motions in limine, joint pretrial order, final pretrial conference, and trial.   The Court did not limit its deadlines to a Phase I.  In fact, the Court's Scheduling Order did not adopt, define, or mention any "phases" for discovery. The Court's Scheduling Order does not mention the word "bifurcate."  The Court's Scheduling Order does not change the "motion practice/dispositive motions" deadline to "Class Certification Motions" as urged by Defendants.  Therefore, it is clear the Court's Scheduling Order did not adopt Defendants' suggestion to bifurcate discovery.

Defendants argue that the Court's Scheduling Order did not address the "scope" of discovery or "contain rulings or guidance on the permissible scope of discovery." Defendants are misguided in this argument.  The Court set the discovery deadline as July 19, 2013–the date submitted in the Scheduling Order Checklist–not the dates proposed by Defendants in the Addendum to "Scheduling Order Checklist" that urged the Court to enter deadlines bifurcating discovery.  Additionally, the Court's Scheduling

Order defined "Discovery Completion" as follows:

> **All** discovery shall be fully served and completed by **July 19, 2013**.
> "Completed discovery" as used in Fed. R. Civ. P. 16(b)  means that **all**
> discovery requests are to be filed far enough in advance to be completed
> as required by the rules before the discovery deadline.  Objections,
> motions to compel and all other motions relating to discovery in this civil
> action should be filed as soon as the problem arises, but are to be filed no
> later than one week after the discovery completion date.  The Court will
> not consider any discovery related motions untimely filed after the above
> deadline.
>
> The term "all discovery" in the preceding definition of "completed
> discovery" includes the disclosures required by Fed. R. Civ. P. 26(a)(1),(2)
> and (5), but does not include the disclosures required by Fed. R. Civ. P.
> 26(a)(3).

[Doc. 19] (emphasis added).  The Court's Scheduling Order does not limit or bifurcate

discovery.  Indeed, the Court's Scheduling Order clearly states "*all discovery* shall be

fully served and completed by July 19, 2013." *Id.*  Therefore, the Scheduling Order did

not adopt the Defendants' vision to bifurcate discovery into phases.  During the hearing,

Defendants argued, although it was not mentioned in their briefs, that they thought there

may have been a mistake in the Scheduling Order as it did not include a class

certification deadline and that by objecting to Plaintiff's discovery requests, Defendants

could "tee up" the issue regarding the scope of discovery to get it in front of the Judge.

If Defendants were confused by or thought there was a mistake in the Court's

Scheduling Order, Defendants could have easily filed a motion for clarification as they

promptly did in response to Judge Seibert's Original Order rather than disregarding the

plain language mandate of the Scheduling Order and utilizing a circuitous and

needlessly expensive route to get the issue before this Court.

**B.    Defendants' Objections to Magistrate Judge Seibert's Original Order and Amended Order**

With the proper framework in mind regarding the Court's Scheduling Order and the understanding that the Court did not limit discovery, the Court will now address the Defendants' objections to Judge Seiberts's Original Order and Amended Order.

**1.    First Objection:** Orders Compelling Defendants to Produce Documents in Response to Plaintiff's Request Numbers 4, 5, 13, and 14 for Employees Who Voluntarily Left Employment[4]

Defendants argue that Judge Seibert's Original Order limiting discovery to "those employees involuntarily terminated in West Virginia in the past five years" is the correct ruling as Judge Seibert's Amended Order expanding discovery to include voluntarily and involuntarily terminated employees' records lacked a reasonable basis.  Judge Seibert's Amended Order granted discovery of voluntarily and involuntarily terminated former employees' records because it was within the proper scope of discovery as Defendants maintained that Plaintiff, in fact, was voluntarily terminated.  Additionally, Judge Seibert stated that "[t]his expanded discovery will better aid Plaintiff in representing to the Court whether she meets the standard for Rule 23 class certification, particularly the typicality and commonality of the claims and defenses."

The Court does not find that Judge Seibert's ruling was clearly erroneous or contrary to law.  Federal Rule of Civil Procedure 26(b) provides for broad discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense-

---

[4] The Original Order originally denied most of Plaintiff's requests regarding employees who "voluntarily" left employment with Defendants (except for Plaintiff's Request No. 5, which was granted).  However, the Amended Order ultimately granted all of Plaintiff's discovery requests regarding employees who "voluntarily" left employment after Defendants continued to assert that Plaintiff was "voluntarily" terminated under a constructive abandonment theory.

including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." **FED. R. CIV. P. 26(b)(1)**.

Defendants contend that their asserted defense should not be used to expand the scope of discovery; however, Rule 26(b)(1) specifically provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or *defense*." **FED. R. CIV. P. 26(b)(1)** (emphasis added).   Additionally, Plaintiff's request for the records of voluntarily terminated employees is relevant.  Defendants characterized Plaintiff's alleged involuntary termination as a "voluntary termination" under a "constructive abandonment" theory.  In this case, Plaintiff was terminated after she failed a drug test.  Defendants maintain that Plaintiff's position was constructively abandoned, and thus voluntarily terminated under the WPCA, because Plaintiff failed to comply with Defendants' drug policies.  The  WPCA only provides for payment of an employee's wages in full within seventy-two hours if the employee was discharged.  **W. VA. CODE § 21-5-4(b)**.  The West Virginia Code of State Rules defines discharged, as used in the West Virginia WPCA, as "any *involuntary* termination of the cessation of performance of work by employee due to employer action."  **W. VA. C.S.R. § 42-5-2.8** (emphasis added).  Therefore, the distinction between a voluntary terminated employee and an involuntarily terminated employee is key to Plaintiff's claim and the prospective class action.

11

Thus, Plaintiff's discovery requests regarding individuals labeled by Defendants as "voluntarily terminated" is relevant as individuals labeled as "voluntarily terminated" by Defendants may nonetheless be "involuntarily terminated" for purposes of the WPCA.  As the scope of discovery was discussed previously in this Order, the Plaintiff may properly seek discovery regarding Defendants' former employees who were involuntarily terminated and voluntarily terminated as it is relevant to class certification under Rule 23.  Accordingly, the Court **OVERRULES** Defendants' objection and **AFFIRMS** Judge Seibert's ruling.

**2.      Defendant's Second Objection:** Disclosure of All Names and Contact Information

Defendants argue that the "disclosure of names and contact information, including that sought by way of Plaintiff's Request N[umbers] 3, 4, 5, 13, 14 and 15 should only follow, if at all, when a class has been certified."  Defendants also contend that providing Plaintiff with names and contact information "could potentially provide Plaintiff's counsel with information for the sole purpose of identifying new subclasses or initiating entirely new litigation."  Defendants argue that Judge Seibert's Order "cite[d] no cases for the proposition that a plaintiff is entitled, without justification or reasonable grounds, to discover all names, addresses, telephone numbers, pay and employment records of individuals in a large state-wide putative class action, particularly given the class allegation is supported only by bare allegations of a single complaint."  Therefore, Defendants state that their objections to Request Numbers 5 and 15 should have been sustained on grounds of relevancy.

In this case, Defendants have suggested that Plaintiff was "voluntarily

12

terminated" for failing a drug test; however, Plaintiff argues that she was "involuntarily terminated" and thus the seventy-two hour rule under the WPCA applies.  Plaintiff's request for the contact information of all employees, voluntarily and involuntarily terminated, is relevant as Defendants have claimed that Plaintiff was voluntarily terminated.[5]  Judge Seibert found that the information was relevant and helpful to Plaintiff's putative class action.  As stated above, to be "relevant information," the information sought must be "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in the case."  **Hickman**, 329 U.S. at 501.  Rule 26(b)(1) also provides for the discovery of the "identity and location of persons who know of any discoverable matter," i.e. contact information. **FED. R. CIV. P. 26(b)(1)**.  In this case, the information is relevant because Defendants may have labeled a former employee's termination as voluntarily terminated even though, in reality, the former employee was involuntarily terminated and the seventy-two hour rule under the WPCA would apply.  Therefore, Plaintiff has reasonable grounds for requesting the contact information of former employees to determine whether they were, in fact, voluntarily or involuntarily terminated.  This information is relevant and reasonably calculated to lead to the discovery of admissible evidence.  Additionally, the information would be necessary to determine the Rule 23 certification issues regarding

---

[5] Plaintiff's Interrogatory No. 25: "State all facts known to the Defendants at the time of responding to this interrogatory upon which the Defendants rely in contending that the Plaintiff was timely and properly paid consistent with the requirements of the West Virginia Wage Payment and Collection Act."
Defendants' Answer: "Defendants believe that Plaintiff voluntarily engaged in activities that caused her to fail a drug test, and as a result believe therefore that her position was constructively abandoned or resigned without notice." [Doc. 32-2].

whether "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequate protect the interests of the class." **FED. R. CIV. P. 23(a)**.

Defendants also suggest a *de facto* ban, at this point, on Plaintiff's communication with potential putative class members by requesting the Court prohibit disclosure of prospective putative class members' contact information.[6]  In **Gulf Oil Co. v. Bernard**, the Supreme Court addressed the power of a district court to limit communications from named plaintiffs and their counsel to prospective class members prior to class certification under Rule 23 of the Federal Rules of Civil Procedure.  452 U.S. 89, 91, 101 S. Ct. 2193 (1981).  The Supreme Court recognized that class actions present opportunities for abuse.  *Id.* at 100.  Thus, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.*

In *Gulf Oil*, the Supreme Court rejected a total ban on communication between the plaintiff and putative class members, and held that an order that limits a party's

---

[6]Defendants argue they have not sought a communication ban.  Although Defendants have not asked outright for a communication ban, that is because they are refusing to disclose any of the prospective class members' contact information. Defendants have essentially requested a *de facto* communication ban by objecting to the disclosure of prospective class members' names and contact information for fear that Plaintiff's attorney would contact them to drum up new clients—without disclosure of the names and contact information, it is nearly impossible for Plaintiff to communicate with other prospective class members.  Therefore, this results in a *de facto* communication ban and, at the least, making the Supreme Court's analysis and decision in *Gulf Oil* useful to this Court.

ability to communicate with putative class members "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101.  The order should be based on "a specific record showing by the moving party of the particular abuses by which it is threatened." *Id.* at 102 (quoting **Coles v. Marsh**, 560 F.2d 186, 189 (3d Cir. 1977)). The result should be "a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances," and the court must give "explicit consideration to the narrowest possible relief which would protect the respective parties." *Id.*  The Court rejected the limitation the district court placed on the plaintiffs' communication with putative class members because the district court "identified nothing in [the communication] that it thought was improper and . . . gave no reasons" that supported the limitation.  *Id.* at 103.

In applying the standard pronounced in *Gulf Oil*, this Court must first determine whether a limitation on Plaintiff's communication with putative class members is necessary.  "In order for the moving party to show that a limitation is necessary, '[t]wo kinds of proof are required.  First, the movant must show that a particular form of communication has occurred or is threatened to occur.  Second, the movant must show that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation.'" **The Kay Co., LLC v. Equitable Prod. Co.**, 246 F.R.D. 260, 262 (S.D.W. Va. 2007) (quoting **Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.**, 214 F.R.D. 696, 697-98 (S.D. Ala. 2003) (internal citations omitted))

Defendants must show not only that a communication has occurred or is

threatened to occur, but also that the particular form of communication is abusive. "Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel." *The Kay Co., LLC*, 246 F.R.D. at 263 (citations omitted). Defendants argue that "disclosing names and contact information for thousands of former employees can serve impermissible purposes–identifying additional putative plaintiffs to generate additional subclasses or lawsuits and/or needlessly result in intrusion on personal privacy."  Defendants have not alleged that Plaintiff's occurred or threatened to occur communication distributes false, misleading, or confusing statements.  Thus, a limitation on Plaintiff's communication with class members is inappropriate.

As the contact information has already been determined to be relevant and within the proper scope of discovery, the Court **OVERRULES** Defendants' objection and **AFFIRMS** Judge Seibert's ruling.  Additionally, the Court notes that there is a protective order in place regarding "both personal and job-related employee information including any documents regarding payroll-related information" that should alleviate any concern regarding the distribution, transmission, or disclosure of any document or other material marked confidential and its contents to persons not listed on the Protective Order [Doc. 27].

16

3.     **Third Objection:** Production of "Class List," Contact Information, Employment Records and Payroll Records of Voluntarily Terminated Employees

Defendants argue that Plaintiff's request should be denied because they are "on the face of it and in practice, overly broad, unduly burdensome and beyond the reasonable scope of discovery before an order on class certification has been entered." Again, Defendant urges for a "limited scope of representative sample" prior to certification of the class.

District courts have wide discretion in conducting a class action to issue orders that "determine the course of proceedings." **FED. R. CIV. P. 23(d)**.  Discovery may be used to "illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 98 S. Ct. 2380, n. 13 (1978) (citing Annot. Discovery for Purposes of Determining Whether Class Action Requirements Under Rule 23 (a) and (b) of Federal Rules of Civil Procedure Are Satisfied, 24 A.L.R. Fed. 872 (1975)).  Indeed, district courts in the Fourth Circuit have held that "discovery relating to class allegations is proper prior to certification" and "the Court is unable to intelligently rule on the question [of class certification] without information from the parties, which is usually gathered through normal discovery . . . ." ***Am. Fin. Sys. Inc. v. Pickrel***, 1974 WL 105, *4 (D. Md. Feb. 1, 1974) (citing cases in the Fourth Circuit with similar holdings).  Although Defendants suggest that discovery on the merits prior to certification of a class is a foreign and even incorrect concept, many federal courts have permitted discovery on the merits prior to class certification. ***In re Rail Freight Fuel Surcharge Antitrust***

17

*Litig.*, 258 F.R.D. 167, 173-174 (D.C. 2009) (refusing to bifurcate discovery where "the evidence plaintiffs need for certification purposes is closely intertwined with the merits evidence"); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, *3-4 (E.D. Pa. Nov. 29, 2004) (finding certification and merits discovery to be "sufficiently intermingled" when plastic companies entered into a national price-fixing conspiracy because the discovery needed to prove the existence of the conspiracy (merits) and the consequential damages to the class members (certification) overlapped).

As pointed out by Defendants, "district courts are required to balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304-05 (D. Colo. 1998) (citing *Shushan v. Univ. of Colo.*, 132 F.R.D. 263, 267-68 (D. Colo. 1990)).  In weighing the evidence, Judge Seibert limited the scope of discovery to a five year period contained to Defendants' former employees in West Virginia regarding a narrow issue of Defendants' compliance with the WPCA.  In this case, Judge Seibert concluded that discovery of contact information, employment records, and payroll records of voluntarily terminated employees was necessary for Plaintiff to attempt to satisfy the standards of Rule 23.  As explained above, this was based on Defendants' categorization of Plaintiff as "voluntarily terminated" through constructive resignation.  Although Defendants now argue that Plaintiff was classified as involuntarily terminated in her personnel record, the documents regarding voluntarily terminated individuals is reasonably necessary for Plaintiff to determine if Defendants have mislabeled a former employee as "voluntarily" terminated rather than "involuntarily"

terminated.  To certify the class, Plaintiffs must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." **FED. R. CIV. P. 23(b)(3)**.  Discovery of documents of "voluntarily" terminated former employees will aid the Plaintiff in determining (1) whether the individuals were in fact involuntarily terminated and (2) whether the individuals were not paid according to the seventy-two hour rule.  Plaintiff most likely must secure such evidence to satisfy this "predominance" requirement. Although Defendants insist that this Court should limit the scope of discovery to class certification discovery and exclude merits discovery at this point, the Court finds the limited scope of discovery fails to promote judicial economy as it would require "ongoing supervision of discovery." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. at 174.  If the Court did limit discovery to only class certification, this Court "would likely have to resolve various needless disputes that would arise concerning the classification of each document as 'merits' or 'certification' discovery." *Id.* (quoting *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 459 (D. Kan. 2006)).  The Court finds that creating such a distinction in this case would also result in "significant duplication of effort and expense to the parties." *Id.* (quoting **MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.213**). Accordingly, Judge Seibert's ruling was not "clearly erroneous" or "contrary to the law," and the Court **OVERRULES** Defendants' objection and **AFFIRMS** Judge Seibert's ruling.

**C.      Reasonable Expenses and Sanctions**

Defendants argue that Plaintiff is not entitled to recovery of attorneys' fees and

expenses because Defendants' objections were "substantially justified."  Judge Seibert

granted Plaintiff's Motion to Compel in its entirety.  Therefore, in determining whether to

award reasonable expenses, the Court looks to Federal Rule of Civil Procedure

37(a)(5)(A).  Federal Rule of Civil Procedure 37 provides that if a motion for an order

compelling disclosure or discovery

> is granted–or if the disclosure or requested discovery is provided after the
> motion was filed–the court must, after giving an opportunity to be heard,
> require the party or deponent whose conduct necessitated the motion, the
> party or attorney advising that conduct, or both to pay the movant's
> reasonable expenses incurred in making the motion, including attorney's
> fees.  But the court must not order this payment if:
>> (i) the movant filed the motion before attempting in good faith to
>> obtain the disclosure or discovery without court action;
>>> (ii) the opposing party's nondisclosure, response, or
>> objection was substantially justified; or
>> (iii) other circumstances make an award of expenses unjust.

**FED. R. CIV. P. 37(a)(5)(A)**.

Plaintiff is entitled to reasonable expenses unless Defendants' failure to respond

was "substantially justified," special circumstances make the award unjust, or Plaintiff

failed to meet and confer before filing the motion.  Plaintiff's counsel attempted in good

faith to resolve the discovery disputes *prio*r to filing the instant motion to compel.  On

December 4, 2012, Plaintiff's counsel contacted Defendants' counsel by letter to resolve

the discovery dispute.  Plaintiff's counsel states "I'm writing in a good faith effort to

resolve disputes regarding the unverified, unsigned <u>Defendants' Responses and

Objections to Plaintiff's Requests for Production</u> and <u>Defendants' Answers and

Objections to Plaintiff's Interrogatories . . . ."  [Doc. 32-4].  Also, in defending against the award of reasonable attorneys' fees and expenses, Defendants have argued only that its objections were substantially justified.  Therefore, the Court, upon reviewing Defendants' objections, finds that special circumstances do not make an award unjust.  Therefore, the Court analyzes the award of attorneys' fees under Federal Rule of Civil Procedure 27(a)(5)(A)'s second prong.

In order for Plaintiff to be awarded costs, Defendants' nondisclosure, response, and objections must not have been substantially justified.  The Fourth Circuit Court of Appeals noted that the substantial justification standard was met when "[a]t the very least, a reasonable person could differ as to the appropriateness of the contested action."  ***Bryte v. Am. Household, Inc.***, 142 Fed. Appx. 699, 703 (4th Cir. 2005) (citing ***Pierce v. Underwood***, 487 U.S. 552, 565, 108 S. Ct. 2541 (1988) (noting that "substantially justified" means a "genuine dispute" where "reasonable people could differ as to [the appropriateness of the contested action]") (citations and internal quotation marks omitted).  Additionally, "the ability to make a plausible case . . . is all that is required for substantial justification."  ***Twigg v. Pilgrim's Pride Corp.***, 2007 WL 676208 * 5 (N.D.W. Va. Mar. 1, 2007).

***First***, Defendants state it had a substantial justification for its objections because it objected to "producing private, confidential and personal information of former employees" which "is a ground recognized as a 'substantially' justifiable position."  Defendants cite ***Smith v. Montgomery County***, 573 F. Supp. 604, 614 (D. Md. 1985), stating that the district court found "that because there were 'significant privacy grounds

21

for objecting to disclosure of detainees' names,' an award of attorney's fees was not appropriate."  However, in *Smith*, the district court denied plaintiff's motion for reasonable costs, including attorneys' fees, because plaintiff moved to compel the name of the detainee who was present during a strip search of plaintiff as well as the names of other temporary detainees who had been strip searched without probable cause and defendants had "significant privacy grounds for objecting to disclosure of the detainees' names."  *Id.*  However, a key difference between the *Smith* case and this case is that in *Smith* there was no protective order in place whereas this case has a protective order in place.  In fact, in *Smith*, Defendants had moved for a protective order to limit disclosure of the detainees' names.  In this case, a protective order was in place essentially restricting any private, confidential, and personal information to the case participants and court users.  Thus, the privacy grounds for objecting to disclosure that were present in *Smith* are not present here.

**Second**, Defendants argue that its objections were not "general" or "boilerplate" and should not be used as a basis for awarded expenses.  Defendants contend that although their objections contained general or boilerplate language, the objections also contained specific grounds.

An objection to requested discovery may not be made until after a lawyer has "paused and consider[e]d" whether, based on a "reasonable inquiry," there is a "factual basis [for the] . . . objection."  **FED. R. CIV. P. 26(g)** advisory committee's notes to the 1983 amendments.  Generalized objections are highly disfavored in the Fourth Circuit. *See **Mainstreet Collection, Inc. v. Kirkland's, Inc.**, 270 F.R.D. 238 (E.D.N.C. 2010)

(mere recitation of the familiar litany that a request is overly broad, burdensome, oppressive, and irrelevant does not constitute a specific objection); ***Hager v. Graham***, 267 F.R.D. 486, 492 (N.D.W. Va. 2010) ("General objections to discovery, without more, do not satisfy the burden of the responding party under the Federal Rules of Civil Procedure to justify objections to discovery because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."); ***Mills v. East Gulf Coast Preparation Co., LLC,*** 259 F.R.D. 118, 132 (S.D.W. Va. 2009) ("boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); ***Mancia v. Mayflower Textile Servs. Co.***, 253 F.R.D. 354 (D. Md. 2008) (court disapproves of a general objection asserted "to the extent" that it applies); ***Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.***, 246 F.R.D. 522, 530-31 (S.D.W. Va. 2007) (finding that boilerplate objections to defendant's requests for production of documents, which indicated simply that requests were overbroad, unduly burdensome, and not reasonably calculated to lead to discovery of admissible evidence, did not comply with the rule, which required specific objections).  "The failure to particularize [an] objection[] as required leads to one of two conclusions: either the Defendants lacked a factual basis to make the objections that they did, which would violate Rule 26(g), or they complied with Rule 26(g), made a reasonable inquiry before answering and discovered facts that would support a legitimate objection, but they were waived for failure to specify them as required." ***Mancia***, 253 F.R.D. at 364.  A party's reliance on general objections often results in the waiver of all specific objections.  FED. R. CIV. P. 33(b)(4).  "While Rule 34 lacks similar waiver provisions, this Court has applied the

waiver provision applicable to interrogatories under Rule 33 to document production requests."  **Cain v. Liberty Mut. Ins. Co.**, 2011 WL 1833096 (N.D.W. Va. May 13, 2011).

In **Deakins v. Pack**, the Court stated that:

[i]n most if not all cases, an objection to a discovery request in conformity with the Rules will contain (1) a recital of the parties' claims and defenses, (2) a summary of the applicable statutory and/or case law upon which the parties' claims and defenses are predicated including the elements of each claim or defense, (3) a discussion of Court decisions considering the breadth or scope of discovery and any limitations upon discovery in the same or a similar type of case and (4) a statement respecting how and/or why the request seeks information which is irrelevant or will not likely lead to the discovery of relevant information or is vague, overly broad, burdensome or interposed for an improper purpose.  Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections.

2012 WL 242859, *4 (S.D.W. Va. Jan. 25, 2012) (citing **Sabol v. Brooks**, 469 F. Supp. 2d 324, 328 (D. Md. 2006)).

Judge Seibert granted Plaintiff's Request Numbers 3, 4, 5, 8, 15, 17 and 24. Judge Seibert found that Defendants "generally objected, and reiterated its contention that this class-wide discovery should not be permitted."  Defendants object to Judge Seibert's rulings granting Plaintiff's Discovery Requests Numbers 3, 4, 5, 8, 15, 17, and 24 because their objections were not "impermissible 'boilerplate' objections" and were "supported by particularized facts and specific grounds."

As this Court has stated, and Judge Seibert found in his orders, the scope of discovery was not bifurcated and any belief otherwise was in direct contravention of the Court's Scheduling Order.  Therefore, any objection based on Defendants' assertion that "class-wide discovery should not be permitted" is unpersuasive and violates the

scope of discovery as announced in this Court's Scheduling Order.

Also, Defendants objected to the documents requested on the grounds that they are "not relevant or reasonably calculated to lead to the discovery of admissible evidence, assumes facts not in evidence, and that the request is overly broad and unduly burdensome." *See* Objection to Request No. 8[7]; Objection to Request No. 17.[8]

---

[7]**No. 8:** Produce all communications, including electronically stored communications to payroll service providers (such as First Data's Pay Stub Portal) concerning the timing and/or issuance of final wages due to employees during the Period.

**OBJECTIONS:** Defendants object to Request No. 8 on the grounds that it is seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to Request No. 8 on the grounds that it assumes facts not in evidence; specifically, that "First Data's Pay Stub Portal" is a payroll service provider. Defendants further object to Request No. 8 on the grounds that it is overly broad and unduly burdensome with because all "communications" concerning "the issuance of the final wages" could encompass numerous documents having no relevance to Plaintiff's claims.

**RESPONSE:** Subject to and without waiving the foregoing objections, Defendants respond as follows: Defendant does not possess documents of communications to payroll service providers concerning the administration of individual employee payroll. Defendants will produce the contracts between Dollar General and First Data Corporation.

[8]**No. 17:** Produce all documents concerning the timing of final payment to employees during the Period that were provided to or received from First Data's Pay Stub Portal.

**OBJECTIONS:** Defendants object to Request No. 17 on the grounds that it is vague, ambiguous and confusing as to the meaning of Request, including but not limited to the phrase of "that were provided to or received from First Data's Pay Stub Portal." Defendants further object to Request No. 17 on the grounds that it seeks "all documents" related to timing of final pay for all employees who separated during the period. The Court should not have to determine the merits of each individual class member's claim to determine whether or not a class is proper or whether any given individual is a class member. Defendants further object to Request No. 17 on the grounds that it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. To the extent that Request No. 17 seeks

25

The details provided by Defendants regarding why the requests are objectionable do not permit the Plaintiff to adequately respond nor is it useful to the Court in ruling on a discovery motion.  For example, in objection to Request Number 3, Defendants object "on the grounds that it seeks documents or information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.  This Request appears to be a fishing expedition whose purpose is to identify a representative Plaintiff for a new subclass or new lawsuit."  This objection does not provide particularized facts as to why the documents are not relevant, or even reasonably calculated to lead to the discovery of admissible evidence.  Additionally, the Court entirely disregards the Defendants' general objection that Plaintiff is on a "fishing expedition."  The Federal Rules of Civil Procedure allow courts to "determine the pond, the type of lure, and how long the parties can leave their lines in the water."  *Eli Lilly & Co. v. InvaGen Pharms., Inc.*, 1:09-CV-87-WTL-TAB (S.D. Ind. Sept. 17, 2009).  As already discussed, the Court defined the scope of discovery, and consequently "the pond," in its Scheduling Order.

In objection to Request Number 24, Defendants state that "it is not relevant to Plaintiff's claim or reasonably calculated to lead to the discovery of admissible evidence, and is premature to the extent that it seeks to establish class-wide damages."[9]  Again,

---

documents that are relevant, there are far less burdensome means of obtaining the relevant information, such as payroll records.

[9]**No. 24:** If the Defendants contend that they (either individually or jointly) did, as a matter of practice or policy, pay liquidated damages and statutory interest to employees who were separated from employment during the Period but who were not paid their wages within the time periods specified in the Wage Payment and Collection Act produce documents concerning such payment(s).

**OBJECTIONS**: Defendants object to Request No. 24 on the grounds that it calls for a

the Defendants' boilerplate objection fails to provide particularized facts regarding how and why the request seeking to establish class-wide damages is outside the scope of discovery or unduly burdensome at this point.  The boilerplate and general objection language is throughout the entirety of Defendants' objections to Plaintiff's Request Numbers 3, 4, 5, 8, 15, 17 and 24.  Additionally, as discussed in the Court's analysis of the scope of discovery, Plaintiff's requests are within the scope.

Defendants cite *Hager* for the proposition that "specific grounds in addition to the boilerplate is permissible.  The Rule states that the responding party must specify the grounds for each objection.  It does not say that a general objection in addition to the specific grounds is noncompliant."  ***Hager***, 267 F.R.D. at 492.  The key difference is that in this case, the "specific grounds" used to object were based upon the Defendants' argument that discovery should not be conducted on the merits, but rather limited to the certification issue.  As discussed thoroughly above, the Scheduling Order did not limit discovery in any way.  Accordingly, the specific grounds, if any, lacked a substantial justification as they violated this Court's Scheduling Order.

***Third***, Defendants argue that their objections to "across-the-board discovery of information about all former employees or an entire putative class were 'substantially

---

legal conclusion as to whether any employee was "paid their wages within the time periods specified in the Wage Payment and Collection Act."  Defendants further object to Request No. 24 on the grounds that it is not relevant to Plaintiff's claim or reasonably calculated to lead to the discovery of admissible evidence, and is premature to the extent that it seeks to establish class-wide damages.

**RESPONSE**: Subject to and without waiving the foregoing objections, Defendants state that they do not maintain any "policy" document regarding the payment of liquidated damages and statutory interest, and thus there are no responsive documents.

27

justified' and not 'general objections.'" Defendants argue that there is a substantial body of case law supporting their position that discovery should be limited to the certification issue or the merits of Plaintiff's claim–not to the merits of the putative class's claim. Again, as explained above, Defendants attempt to place a limit on discovery. The Court's Scheduling Order clearly did not limit the scope of discovery and substantial case law also supports this Court's decision to allow both merits-based and certification-based discovery.  Therefore, Defendants have no substantial justification for not providing information regarding the putative class.

*Last*, Defendants argue that they at least had a substantial justification for objecting to the disclosure of employees' records that were voluntarily terminated, particularly in light of Judge Seibert's Original Order denying the discovery requests for information of voluntarily terminated employees.  Defendants' own answer to Plaintiff's Interrogatory Question Number 25 made the documents of voluntarily terminated former employees relevant because Defendants alleged, as a defense, that Plaintiff was voluntarily terminated.   Accordingly, Defendants did not have a substantial justification for objecting to the disclosure of voluntarily terminated employee's record as Plaintiff's are entitled to discover information relevant to any defense asserted by Defendants.

In considering all of Defendants' objections to Judge Seibert's award of reasonable expenses, the Court finds Judge Seibert's ruling was not clearly erroneous or contrary to law.  Therefore, the Court **OVERRULES** Defendants' objection and **AFFIRMS** Judge Seibert's ruling.  Plaintiff must file an affidavit regarding any additional expenses incurred on or before, May 1, 2013.  Thereafter, Defendants must file any

written objections to Plaintiff's affidavit within seven days.

## V.  Conclusion

Accordingly, the Court finds the following:

1.  The Court **OVERRULES** Defendants' objections to Judge Seibert's Original and Amended Order [Doc. 72];

2.  The Court **AFFIRMS** Judge Seibert's Amended Order [Doc. 65];

3.  The Court **LIFTS** the partial and temporary stay of Magistrate Judge Seibert's Original and Amended Orders [Docs. 55 and 71];

4.   Plaintiff must file an affidavit of additional, related reasonable expenses incurred following the issuance of Judge Seibert's Amended Order by May 3, 2013. Within seven days thereafter, Defendants must file written objections, if any, to Plaintiff's affidavit of reasonable expenses.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or any *pro se* parties herein.

**DATED:** April 25, 2013

GINA M. GROH
UNITED STATES DISTRICT JUDGE