**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**STEPHANIE PAULINO**, individually
and as Class Representative,

        **Plaintiffs,**

**v.**

                                     **CIVIL ACTION NO. 3:12-CV-75
                                     (JUDGE GROH)**

**DOLLAR GENERAL CORPORATION
AND DOLGENCORP, LLC,**

        **Defendants.**

## REPORT AND RECOMMENDATION THAT PLAINTIFF'S
## MOTION FOR RULE 23 CLASS CERTIFICATION [102] BE GRANTED

Pending before the Court is the Plaintiff's Motion for Rule 23 Class Certification [ECF No. 102], filed on December 2, 2013. Defendants filed a Memorandum in Opposition [ECF No. 117] on December 19, 2013 and Plaintiff filed a Reply Brief [ECF No. 122] on December 30, 2013. Defendants filed a Supplemental Memorandum in Opposition [ECF No. 131] on January 10, 2014. The Court held an evidentiary hearing and argument on January 14, 2014, at which Plaintiff appeared by David M. Hammer, Esq., and Defendants appeared by Joel S. Allen, Esq. Defendants submitted several prepared exhibits. Most of those exhibits were duplicates of exhibits produced during briefing but four new documents were included. The exhibits were admitted into evidence with no objection by Plaintiff.

The undersigned, having reviewed the motion and memoranda submitted, and

the evidence presented at the hearing, recommends that the Plaintiff's Motion for Rule 23 Class Certification **[ECF No. 102]** be **GRANTED** because all the requirements of the Federal Rules of Civil Procedure Rules 23(a) and (b) have been met.

## I. BACKGROUND

In this action, Plaintiff Stephanie Paulino ("Paulino") claims her former employer, Dollar General Corporation and Dolgencorp, LLC, foreign corporations, ("Defendants"), violated the West Virginia Wage Payment and Collection Act ("WPCA"), W. Va. Code §21-5-1, *et seq.* [ECF No. 102]. Plaintiff claims she and other former employees of Defendants at numerous store locations throughout the state of West Virginia were involuntarily terminated but, notwithstanding the requirements of the WPCA, were not paid their final wages within 72 hours after their employment was terminated. Plaintiff brings this claim on behalf of herself and other similarly situated involuntarily terminated employees who were untimely paid pursuant to the Federal Rules of Civil Procedure Rule 23. Plaintiff seeks a certified class consisting of all former West Virginia employees involuntarily terminated by Defendants within the five years preceding the filing of this civil action who did not receive their wages within 72 hours of termination and liquidated damages or statutory interest as required by the statutory lien mandated under WPCA. Plaintiff argues that such a proposed class would meet all of the requirements of the Federal Rules of Civil Procedure Rules 23(a) and 23(b).

On December 19, 2013, Defendants filed a Memorandum in Opposition [ECF No. 117] to the Plaintiff's motion. Defendants stated four reasons why Plaintiff's Motion for Rule 23 Class Certification should be denied. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF

No. 117 at 3). First, Defendants argue that Plaintiff has not established the existence of any common questions of law or fact that can be answered on a class-wide basis as required by the Rule 23(a)(2) "commonality" requirement and the Rule 23(b)(3) "predominance" requirement. (*Id.*). Second, a class action is not a superior alternative method of resolving individual claims. (*Id.*). Third, Plaintiff's claims are not typical of the putative class members because the determination of whether Dollar General failed to provide timely final pay to Plaintiff will not make it more or less likely that Dollar General failed to timely pay any other putative class member. (*Id.*). Defendants further argue that Plaintiff's claims are not typical because Plaintiff was terminated for an "employee-specific reason - the failure of a drug test" while other class members were "laid-off", as defined by the WPCA. (*Id.*). Finally, Defendants argue that many of the managers who would be responsible for the alleged violations of the WPCA are also putative class members; therefore, Plaintiff cannot meet the "adequacy" requirement of Rule 23. (*Id.* at 4).

On December 20, 2013, Plaintiff filed a Reply [ECF No. 122], reiterating and supplementing her previous arguments. First, Plaintiff addresses Defendants' contention that the payroll records they provided listing "involuntarily terminated" employees may in fact include some individuals that were laid-off or voluntarily quit their jobs. Plaintiff agrees with Defendants that "the sub-group of former employees who were not involuntarily discharged within the meaning of WPCA should not be included within this class." (Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 1). Second, Plaintiff argues that two common issues are prevalent in the case. First, that Defendants

have a consistent practice of paying their employees on the Friday following the end of the pay period regardless of whether they are terminated for cause, which is the common issue. (*Id.* at 2). Second, that Defendants fail to pay liquidated damages or statutory interest when involuntarily terminated employees are untimely paid, as required by the WPCA. (*Id.*). Plaintiff refers to payroll data provided by Defendants and submitted as exhibits to support these claims for Rule 23 purposes.

On January 10, 2014, Defendants filed a Supplemental Memorandum in Opposition [ECF No. 131]. Defendants argue that information from Plaintiff's own deposition demonstrates that Defendants maintain a policy of complying with the WPCA, which dooms her class action claim. (Defs.' Supplemental Mem. in Opp'n, ECF No. 131 at 1). Defendants argue that there is a store policy that employees receive their final pay within 72 hours of involuntary termination and that Plaintiff testified at her deposition that she knew about this policy. (*Id.* at 2). Defendants further argue that by conceding the policy argument, Plaintiff is left attempting to prove a uniform "practice" of non-compliance with the WPCA by "reverse engineering terminate date and pay date data." (*Id.*).

## II. DISCUSSION

### A. Rule 23 Class Certification

"Class certification is strictly a procedural matter, and the merits of the claims at stake are not to be considered when deciding whether to certify a class." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177 (1974); *Hewlett v. Premier Salons International, Inc.*, 185 F.R.D. 211, 214 (D. Md. 1997). "A district court has broad

discretion in deciding whether to certify a class." ***Thorn v. Jefferson-Pilot Life Ins. Co.***, 445 F.3d 311, 317 (4th Cir. 2006) (quoting ***Lienhart v. Dryvit Sys., Inc.***, 255 F.3d 138, 146 (4th Cir. 2001).

"[P]laintiffs bear the burden…of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden…." ***Thorn***, *supra* (quoting ***Gariety v. Grant Thornton, LLP***, 368 F.3d 356, 370 (4th Cir. 2004).

Furthermore, a district court must conduct a "rigorous analysis" to ensure compliance with Rule 23, paying careful attention to the requirements of the Rule. ***Thorn***, *supra*, at 318; ***Gariety v. Grant Thornton, LLP***, 368 F.3d 356, 365 (4th Cir. 2004). In ***Gariety***, the Fourth Circuit has set forth the requirements for class certification:

> A district court may, in its discretion, order that an action proceed as a class action only if it finds that the requirements of Federal Rule of Civil Procedure 23 have been satisfied. Every class action must satisfy the four requirements of Rule 23(a) - numerosity, typicality, commonality, and adequacy of representation, with "the final three requirements ... 'tend[ing] to merge.'" ***Broussard v. Meineke Disc. Muffler Shops, Inc.***, 155 F.3d 331, 337 (4th Cir.1998) (quoting ***Gen. Tel. Co. of the Southwest v. Falcon***, 457 U.S. 147, 157, n. 13, 102 S. Ct. 2364, 72 L.Ed.2d 740 (1982)). In addition, a proposed class must also satisfy the requirements of one of the three Rule 23(b) categories. In this case, the plaintiffs requested certification of the class under Rule 23(b)(3), which requires the court to find (1) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" (the predominance requirement), and (2) that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (the superiority requirement). Rule 23(b)(3)'s predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem Prods., Inc. v. Windsor***, 521 U.S. 591, 623-24, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997).

***Gariety***, 368 F.3d at 362.

**B.**     **Rule 23 Analysis**

In this case, Plaintiff wishes to represent a class consisting of all former West Virginia employees involuntarily terminated by Defendants within the five years preceding the filing of this civil action who were not paid by the third day following their termination. Plaintiff alleges she and the putative class members were not paid their final wages within 72 hours of termination as required under the WPCA.[1] Plaintiff is seeking to enforce for herself and members of the class the statutory lien as mandated by the WPCA, which requires payment of liquidated damages and statutory interest to former employees who were not timely paid.

**1.**     **Rule 23(a)**

FED. R. CIV. P. 23(a) provides that one or more members of a class may bring an action on behalf of members of the class if: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

**a.**     **Numerosity**

The first requirement of Rule 23(a) is that the class must be of such a size that joinder of all members is impracticable. "Impracticable does not mean impossible." ***Robidoux v. Celani***, 987 F.2d 931, 935 (2d Cir. 1993). Practicability of joinder

---

[1] As clarified in Plaintiff's Reply, the class does not include former employees who were not involuntarily discharged within the meaning of the WPCA and does not include involuntarily terminated employees who were timely paid. (Pl.'s Mem. in Supp. of Class Cert., ECF No. 122 at 1).

depends on factors such as the size of the class, ease of identifying its numbers and determining their addresses, the ease of serving them, if joined, and their geographic dispersion. ***Buford v. H&R Block, Inc.***, 168 F.R.D. 340, 348 (S.D. Ga. 1996) (citing ***Kilgo v. Bowman Transp., Inc.***, 789 F.2d 859, 878 (11th Cir. 1986)). The size of individual claims is another factor to consider; where individual claims are so small as to inhibit an individual from pursuing his own claim, joinder is less likely. ***Id.*** (citing ***Luyando v. Bowen***, 124 F.R.D. 52, 55 (S.D.N.Y. 1989)); ***Hewlett v. Premier Salons International, Inc.***, 185 F.R.D 211, 215 (D. Md. 1997).

There is no bright line test for determining numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case. ***Buford****, supra* (citing ***Deutschman v. Beneficial Corp.***, 132 F.R.D. 359, 371 (D. Del. 1990)). The class representatives are not required to specify the exact number of persons in the proposed class. ***Kernan v. Holiday Universal, Inc.***, 1990 WL 289505, *2 (D. Md. 1990) (citing ***Marcial v. Coronet Ins. Co.***, 880 F.2d 954, 957 (7th Cir. 1989)). An unsubstantiated allegation as to numerosity, however, is insufficient to satisfy Rule 23(a)(1). ***Buford****, supra* (citing ***Zeidman v. J. Ray McDermott & Co.***, 651 F.2d 1030, 1038 (5th Cir. 1981)).

In the instant case, as required by this Court, Defendants provided their payroll records listing a group of 1374 employees Defendants characterized as involuntarily terminated employees. (*See* Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 6). Defendants allege, however, that numerous putative class members included on this list must be excluded. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 8). Specifically,

Defendants state that 400 putative class members received their final pay within three days of termination, approximately 50 putative class members received their final pay before their termination date and that 182 class members were "laid off" rather than involuntarily terminated as defined by WPCA. (*Id.*). In her Reply, Plaintiff adjusts for these numbers and purports to represent 751 former employees who were paid more than three days after their termination date.[2] (Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 4; Hr'g Tr. 9, ECF No. 137 at 9; *see also* Defs.' Ex. 1-17, ECF No. 133-26; Defs.' Ex. 4, ECF No. 133-29). During the evidentiary hearing, Defendants further argued that approximately 40 putative class members of the 751 may have been terminated for both a voluntary and involuntary reason and that based on other differences additional putative class members may be excluded. (Hr'g Tr. 29; ECF No. 137 at 29). Even with these potential future adjustments, the Court finds a putative class of approximately 700 to 751 employees sufficiently numerous to make joinder impracticable. Additionally, the relatively small size of the individual claims also makes joinder less likely. Accordingly, Rule 23(a)(1)'s commonality requirement is satisfied.

### b. Commonality

Rule 23(a)(2) requires common questions of law or fact among the members of the class. This "commonality" requirement has been liberally construed and "those courts that have focused on Rule 23(a)(2) have given it permissive application so that

---

[2] Plaintiff based their calculation on payroll data provided by Defendants during discovery that lists 1374 employees as being involuntarily discharged. From that number, Plaintiff subtracted 368 former employees who were laid-off and 255 employees who were timely paid to reach the total of 751 class members. (*See* Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 6-7). Because Defendants did not specifically track whether involuntarily terminated employees were paid within 72 hours of their termination, Plaintiff compared the employee's termination date with the date their paycheck was issued and looked for employees paid after three days of their termination date. (Defs.' Ex. 4, ECF No. 133-29).

common questions have been found to exist in a wide range of contexts." *Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986). "The inquiry is not whether common questions of law or fact predominate, but only whether such questions exist." *Hewlett v. Premier Salons Intern., Inc.*, 185 F.R.D. 211, 216 (D. Md. 1997). Thus, minor differences in the facts do not preclude a finding of commonality and a "single common question of law or fact" satisfies the requirement. *Mitchell-Tracy v. United General Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006).

In this case, the bulk of Defendants' argument challenges both "commonality" and "predominance" under similar theories. Defendants argue: 1) the common question of whether involuntarily terminated employees were timely paid under the WPCA requires an individualized inquiry into each class member and cannot be answered on a class-wide basis; 2) Plaintiff failed to demonstrate the existence of a uniform policy or procedure adopted by Defendants in violation of the WPCA; 3) Putative class members were not injured in the same manner; and 4) Redefining the class as "involuntarily terminated employees who were not timely paid under the WPCA" would result in an impermissible "fail safe" class. (*See* Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117). The Court will address each of Defendants' contentions regarding both the commonality and predominance factors and Plaintiff's responses thereto under this section.

First, Defendants concede that a common question exists as to whether each class member was timely paid under the WPCA but they contend that such a question cannot be answered on a class-wide basis. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 3, 15). Defendants explain that the Court "would have to conduct an individual

9

analysis of each potential class member's claim" and consult "testimonial evidence" in order to determine whether former employees should be included in the class. (*Id.* at 16-17). Defendants argue this individual assessment is necessitated in part because their own records fail to include all the information needed to determine if the former employee indeed falls within the class, such as whether an employee was laid-off or involuntarily terminated, whether they were present at the workplace at the time of termination or returned within 72 hours to receive their final pay, or whether the termination date listed in payroll records is the exact date the employee was actually terminated. (*Id.* at 17-19; *see also* Hr'g Tr. 43, ECF No. 137 at 43).

In response, Plaintiff argues that Defendants were required by the West Virginia Department of Labor to keep records that would show when an involuntarily terminated employee was fired and if they were paid within 72 hours. (Hr'g Tr. 48-49; ECF No. 137 at 48-49). This Court ordered Defendants to produce the records of involuntarily terminated employees and Defendants produced such records. (*Id.* at 49). Defendants did not keep records specifically indicating whether terminated employees were paid within 72 hours. Thus, in order to determine if involuntarily terminated employees were timely paid, Plaintiff compared the employee's date of termination with the date of issuance of the employee's final paycheck. (Hr'g Tr. 8, ECF No. 137 at 8; *see also* Defs.' Ex. 4, ECF No. 133-29). Based on this analysis, Plaintiff argues that the payroll records demonstrate a consistent practice of untimely paying approximately 751 involuntarily terminated employees. (*Id.; see also* Defs.' Ex. 17, ECF No. 133-26). In response, Defendants argue that these records are insufficient on their face to answer

the common questions on a class-wide basis and as a result an individualized factual inquiry of each potential class member is necessary, which means the "commonality" and "predominance" requirements cannot be met. (*Id.*). Plaintiff argues that Defendants' failure to keep accurate records should not prevent a class of statutory lien holders from receiving their pay under the WPCA. (*Id.* at 49-50).

Additionally, Defendants argue that Plaintiff failed to demonstrate they had a "uniform policy or practice of violating the WPCA or that all putative class members were injured in the same manner." (*Id.* at 15). Defendants point to internal records as well as declarations made by four store managers and one district manager indicating that policies and practices were in place to timely pay employees within 72 hours of their involuntarily discharge. (Hr'g Tr. 21, ECF No. 137 at 21). However, Plaintiff argues that the existence of the "policies and procedures is not the issue;" the issue is Defendants' "consistent practice" of paying "employees on the Friday following the end of the pay period regardless of whether they were terminated for cause." (Pl. Reply Br. in Supp. of Class Cert., ECF No. 122 at 8). Moreover, in regard to the common injury, Plaintiff asserts that the shared injury among the class is "Defendants' retention of the lien amount due [to] each of the involuntarily terminated former employees who [were] not timely paid final wages." (Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 3).

As to Defendants' fourth argument, they contend that any attempt to redefine the class as "only those involuntarily terminated employees who were not timely paid under the WPCA" would result in an impermissible "fail safe" class. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 20). A "fail safe" class is "defined in terms of people who

suffered a violation of law." (*Id.*). A "fail safe" class arises when the class definition includes only those who are "entitled to relief." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). Defendants explain that a "fail safe" class requires a court to rule on the merits of the case in order to determine whether a person is actually a member of the class. (*Id.*; *see also* Hr'g Tr. 39; ECF No. 137 at 29). Such a "fail safe" class is impermissible because "the class definition itself precludes the possibility of an adverse judgment against class members." (Hr'g Tr. 39; ECF No. 137 at 29); *see also Randleman,* 646 F.3d at 352 (explaining that "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."). According to Defendants, the individualized inquiry that is required to determine if a former employee is a member of the class (i.e., whether they were untimely paid under the WPCA), simultaneously requires the Court to rule on the merits of the case (i.e., whether Defendants violated the WPCA by untimely paying involuntarily terminated employees) and is thus improper and the class certification should be denied.

Plaintiff did not address the "fail safe" class argument in their Reply. During argument at the evidentiary hearing, Plaintiff argued first that Defendants own failure to keep accurate records makes defining the class more difficult,[3] and second that the present case is distinguishable because it involves the enforcement of a statutory lien as mandated by the WPCA. (Hr'g Tr. 50, ECF No. 137 at 50). Plaintiff argued that

---

[3] Defendants compared the instant case to a California opinion, which denied certification of a class of employees alleging they were untimely paid under the California wage statute because the definition of the class would result in a "fail safe" class. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 20; Hr'g Tr. 40, ECF No. 137 at 40). Defendants explain that the California class had to be redefined as "those who were not paid pursuant to the statute" because Defendants own "records did not show if the individual presented themselves to be paid on the day of termination, and actually what the termination date was." (Hr'g Tr. 40, ECF No. 137 at 40).

Defendants seek to "[ignore] the statutory requirement to pay liquidated damages" and that statutory interest and liquidated damages "shall" be paid pursuant to *Ash v. Ravens Metal Products, Inc.*, 190 W. Va. 90, 94, 437 S.E.2d 254, 258 (1993).[4] (*Id.*).

The Court is not persuaded by the arguments raised by Defendants. The Court finds at least two common questions of fact and law exist: (1) whether it was a consistent practice of Defendants to pay involuntarily discharged employees on the Friday following the end of the pay period regardless of whether they were terminated for cause; and (2) whether Defendants failed to pay liquidated damages or statutory interest to involuntarily terminated employees whom Defendants failed to timely pay under the WPCA.

The documentation listing involuntarily terminated employees provided by the Defendants, as ordered by this Court, provides a sufficient basis for determining these common questions. (*See* Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 3-4). The Court ordered Defendants to produce records of involuntarily terminated employees; Defendants provided records listing 1374 such employees, which included their termination date and the date of issuance of their paycheck. (*See* Defs.' Ex. 17, ECF No. 133-26). The Court agrees with Plaintiff that Defendants cannot now claim the very records they produced listing involuntarily terminated employees, as required by this Court, are not sufficient to identify employees who were involuntarily terminated.

---

[4] In ***Ash v. Ravens Metal Products, Inc***., the Supreme Court of Appeals of West Virginia found the trial court erred by denying the plaintiffs' claims for liquidated damages. The court explained: "[a]s we stated in Syllabus Point 1 of ***Nelson v. West Virginia Public Employees Insurance Board***, 171 W. Va. 445, 300 S.E.2d 86 (1982): 'It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Thus, W. Va. Code 21-5-4(e), prescribes a mandatory requirement that liquidated damages are to be paid whenever an employer fails to 'pay an employee wages as required under [W. Va. Code 21-5-4.]' Therefore, upon remand, liquidated damages must be awarded to those employees who have not been paid wages as required by W. Va. Code 21-5-4."

Moreover, any minor differences among the involuntarily terminated employees listed in the records provided by Defendants falls short of precluding a finding of commonality.[5] *See Mitchell-Tracy*, 237 F.R.D. at 557. The Court rejects Defendants' additional arguments that an individualized assessment is required in order to determine membership in the putative class, such as whether the former employee was present at the time of termination,[6] or whether the termination date listed on Defendants' payroll records is in fact the date the employee ceased working.[7] Accordingly, the common questions as outlined above are capable of being resolved on a class-wide basis and should not warrant a detailed individualized factual inquiry in a manner that would prohibit class certification.

---

[5] Such differences are also easily distinguishable as demonstrated by Defendants ability to reduce the size of the class but identifying those employees who were timely paid, those who were "laid off" rather than involuntarily terminated and those who were terminated based on voluntary and involuntary reasons. While Defendants records may not have been designed "solely for the purposes of complying with the WPCA," the records provided by Defendants are sufficient to demonstrate that the common issues of fact and law predominate among the putative class. (*See* Defs.' Mem. in Opp'n of Pl.'s Mot., ECF No. 117 at 17). As Plaintiff stated, "Dollar General's data is clear, unambiguous, [and reliable], when it suits Dollar General" and the Court finds these records to also be suitable for meeting the commonality requirement. (Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 11).

[6] The Court does not agree with Defendants' argument that an individualized inquiry is required to determine whether an employee was present at work in order to receive timely payment under the WPCA. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 5). In support of their argument Defendants cite a California case interpreting California law, which is not applicable in the current case. (*Id.*). As Plaintiff explained "[i]f [Defendants'] theory was correct, an employee would have to camp out at the store, literally for at least three days, 72 hours, waiting to find out when it is that they might be paid." (Hr'g Tr. 17, ECF No. 137 at 17).

[7] Defendants point to Judge Keeley's decision in *Eddy v. Biddle* in support of their argument that an individualized inquiry is required to determine the exact termination date of the employee. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 10). In *Eddy,* the issue was whether the plaintiff was "discharged" under the meaning of the statute on the date she was actually terminated or the administrative date used when "her discharge became 'effective' in Dolgencorp's system." *Eddy v. Biddle*, 1:11CV137, 2013 WL 66929, at *17 (N.D. W. Va. Jan. 4, 2013). Judge Keeley held that the "discharge" date as used in the WPCA is the "the date her employer causes her to cease working," not the later entered administrative termination date. *(Id.* at 18). The Court is not persuaded that such an individualized inquiry is necessary in the instant case. Even if the termination date listed on Defendants' payroll records is an administrative date entered after the employee's termination, this administrative date would surely fall on or after the date the employee actually ceased working, not before. Thus, relying on this administrative termination date does not change the fact the employee was still untimely paid, but rather only increases the number of days the paycheck was late after the employee actually ceased working.

As to the issue of the "fail safe" class, the Court is not convinced that redefining the class will necessarily result in defining the class in terms of Defendants' ultimate liability. Moreover, the cases cited by Defendants are not binding on this Court and absent Fourth Circuit precedent on the issue, the Court does not find the allegation that Plaintiff presents a "fail safe" class as a sufficient independent basis for denial of class certification. Accordingly, this Court finds the commonality factor satisfied.

### c. Typicality

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members.'" ***Leinhart v. Dryvit Systems, Inc.***, 255 F.3d 138, 146 (4th Cir. 2001) (quoting ***Gen. Tel. Co. of Southwest v. Falcon***, 457 U.S. 147 (1982)).

"[T]o satisfy the typicality requirement, the named representatives' claims must have the same essential characteristics as the claims of the purported class." ***Tipton v. Secretary of Educ.***, 1993 WL 545724 *7 (S.D. W. Va. 1993) (quoting ***De La Fuente v. Stokely Van Camp, Inc.***, 713 F.2d 225, 232 (7th Cir. 1983)); ***Westfall v. Kendle Intern., CPU, LLC***, 2007 WL 486606 (N.D. W. Va. 2007).

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." ***Zapata v. IBP, Inc.***, 167 F.R.D. 147, 160 (D. Kan. 1996). "So long as the plaintiffs and the class have an interest in prevailing in similar legal claims, then the typicality requirement is satisfied." ***Buford v.***

***H&R Block***, 168 F.R.D. 340, 350-51 (S.D. Ga. 1996) (citing ***Meyer v. Citizens and Southern Nat'l Bank***, 106 F.R.D. 356, 361 (M.D. Ga. 1985)).

Defendants challenge Plaintiff's ability to typify the putative class. First, Defendants assert that in this case "liability must be separately proven for each putative class member." (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 23). Specifically, Defendants argue that some former employees who were involuntarily terminated were timely paid under the WPCA, unlike Plaintiff. (*Id.* at 24). Second, Defendants argue that approximately 200 putative class members were "laid off," unlike Plaintiff who was "terminated for an employee-specific reason – the failure of a drug test." (*Id.* at 3, 24). Defendants also allege that "the determination of whether Dollar General failed to provide timely final pay to Plaintiff will not make it any more or less likely that Dollar General failed to timely pay any other putative class member." (*Id.* at 3).

In response to Defendants' contentions, Plaintiff explains in her Reply that in reaching the total of 751 potential class members, she excluded former employees who were laid-off and former employees who were timely paid. (Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 6-7). The 751 putative class members thus include involuntarily terminated employees who were untimely paid and seeking to enforce a statutory lien, just like Plaintiff. (*Id.*). Additionally, Plaintiff argues typicality is met because the claims arise from the "same payroll practices" and are "based on the same legal theory." (Pl.'s Mem. in Supp. of Mot., ECF No. 103 at 7).

For the same reasons commonality is present, as well as the reasons discussed below, the Court finds that typicality is present in this case. Plaintiff's last day at work

was May 22, 2012, which fell during the pay period starting May 19, 2012 and ending May 25, 2012. (Complaint, ECF No. 1-1 at 3). Even though Plaintiff was involuntarily discharged, she was not paid until June 1, 2012,[8] which was more than 72 hours after the termination of her employment. (*Id.*). Additionally, even though Plaintiff was paid beyond the time period specified by the WPCA, Defendants failed to pay liquidated damages or statutory interest. (*Id.*). Plaintiff points to the payroll data provided by Defendants, which shows that approximately 751 involuntarily discharged employees were similarly untimely paid. (Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 8; *see also* Defs.' Ex. 1-17, ECF No. 133-26; Defs.' Ex. 4, ECF No. 133-29). Plaintiff argues that this data demonstrates Defendants consistent practice of paying terminated employees "on the Friday following the end of the pay period regardless of whether they are terminated for cause." (Complaint, ECF No. 1-1 at 3). Additionally, Plaintiff and putative class members are similarly able to enforce a statutory lien against Defendants for liquidated damages and statutory interest because they were untimely paid under WPCA. According, the Court finds that Plaintiff's claims arise from the same course of conduct as that of the putative class members, and the same legal theory underlies the claims of each. Therefore, the Court finds the typicality requirement to be satisfied.

### d. Adequacy of Representation

"To adequately represent the class, the 'class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" **Amchem Products, Inc.**, 521 U.S. 591, 625-26 (1997) (quoting **East Texas Motor Freight Sys., Inc. v. Rodriguez**, 431 U.S. 395, 403 (1977)); **Westfall**,

---

[8] June 1, 2012 is the Friday following the end of the pay period (i.e., May 25, 2012).

*supra*, at *14. "Representativeness requires that the class representatives 'will fairly and adequately protect the interests of the class.'" ***Lienhart****, supra* at 146-47.

"Courts have broken down the requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation." ***Buford***, 168 F.R.D. at 351 (citing ***Griffin v. Carlin***, 755 F.2d 1516, 1533 (11th Cir. 1985)); ***Zapata***, 167 F.R.D. at 160 (citing ***Falcon***, 457 U.S. at 157 n.13)); ***Hewlett****, supra* at 218.

Defendants assert that Plaintiff is not an adequate representative because a conflict exists between Plaintiff and other putative class members, specifically, Dollar General's store managers, who are responsible for ensuring employees are timely paid under the WPCA. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 25). Defendants allege that 48 managers are also putative class members, which means class members "would necessarily be accusing [other class members] of engaging in the unlawful conduct giving rise to their claims." (*Id.*). Plaintiff argues in her Reply that the declarations of a Dollar General district manager and store managers demonstrate that "the practice of untimely payments lies with corporate payroll processing, not store managers." (Pl.'s Reply Br. in Supp. of Class Cert., ECF No. 122 at 9). Because these managers are not involved in processing payroll, Plaintiff argues "there is no adverse interest with former store managers who too are entitled to enforce their statutory lien against Dollar General." (*Id.*).

The Court finds Defendants' allegations regarding the conflict of interest between store managers included within the putative class and Plaintiff to be unwarranted. Defendants cite to the declaration of Joan Dawson, the Director of Human Resources for Dollar General, to support their claim that "[t]he individuals most responsible for ensuring timely final pay under the WPCA are Dollar General's managers." (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 25) (citing Dawson Decl., Ex. 2 ¶ 2, ECF No. 117-2 at 2). However, according to Dawson's declaration, Dollar General's managers are responsible for merely *reporting* involuntarily terminated employees to the Human Resources department ("HRIS") by completing a Personnel Action Form ("PAF").[9] (Dawson Decl., Ex. 2 ¶ 2, ECF No. 117-2 at 2) (emphasis added). The declaration reaffirms Plaintiff's argument that the payment of terminated employees is based on corporate payroll processing, not the individual decisions of managers to withhold final pay.[10] Moreover, the Court agrees with Plaintiff that involuntarily terminated managers who are untimely paid under the WPCA should also entitled to enforce their statutory lien as part of the class. Accordingly, the Court does not find a conflict of interest between Plaintiff and involuntarily terminated store managers who were also untimely paid. Additionally, the Court finds that the representative's claims in seeking redress for the alleged violations of the WPCA are sufficiently interrelated with the claims of the purported class.

---

[9] Based on this declaration, the responsibility of the store manager appears to be completing and then filing the PAF in a timely manner, not ensuring the terminated employee's paycheck is issued by payroll processing within 72 hours rather than the Friday following the end of the current pay period.

[10] The Court notes that managers are responsible for final payment when involuntarily terminated employees are paid using the "payroll paid out procedure," which allows an employee to receive their final pay "directly from a store's cash register instead of receiving a check" or by receiving an "E-Pay Card funded" on the day of their termination. (Hannon Decl., Ex. 3 ¶ 5, ECF No. 117-3 at 2). However, these employees received timely payment and thus are not included in the putative class.

As for the adequacy of class counsel, "[i]n the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *Hewlett, supra* at 218 (citing *Zapata*, 167 F.R.D. at 161). Defendants have not raised any issue with regard to the competency of Plaintiff's counsel. Plaintiff provided a detailed assessment of class counsels' work experience and education in support of the attorneys' ability and competency to represent the class. (Pl.'s Mem. in Supp. of Mot., ECF No. 103 at 8-10). Accordingly, the Court finds that Plaintiff has satisfied the requirement of adequacy of representation.

### 2.    Rule 23(b)

The Plaintiff must also satisfy the requirements of Rule 23(b)(3). "In contrast to actions under Rule 23(b)(1) and (b)(2), Rule 23(b)(3) actions are '[f]ramed for situations in which class-action treatment is not as clearly called for,' but 'may nevertheless be convenient and desirable.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotations omitted). In addition to the four Rule 23(a) requirements, Rule 23(b)(3) actions such as this one must meet two requirements: predominance and superiority. Predominance requires that "[common] questions of law or fact . . . predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Superiority requires that a class action be "superior to other methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Lienhart v. Dryvit*

***Systems, Inc.***, 255 F.3d 138, 147 (4th Cir. 2001).

Rule 23(b)(3)'s predominance requirement is "far more demanding" than Rule 23(a)'s commonality requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." ***Amchem***, 521 U.S. at 623-24; ***Gariety v. Grant Thornton, LLP***, 368 F.3d 356, 362 (4th Cir. 2004). The predominance requirement is similar to but "more stringent" than the commonality requirement of Rule 23(a). ***Lienhart***, 255 F.3d at 146 n. 4. Whereas commonality requires little more than the presence of common questions of law and fact, *see **Id.*** at 146, Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3); ***Thorn v. Jefferson-Pilot Life Ins. Co.***, 445 F.3d 311, 319 (4th Cir. 2006).

Rule 23(b)(3) provides that an action may be maintained as a class action if, in addition to meeting the prerequisites of Rule 23(a), the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These requirements are typically referred to as predominance and superiority. "Although easy to state, these prerequisites become rather opaque when an attempt is made to apply them…[t]he truth is that if one reads fifty or even a hundred cases involving predominance and superiority, a clear picture of what is happening under Rule 23(b)(3) does not emerge…[a] DaVinci or Michaelangelo could not draw a straight line through the subdivision (b)(3) cases." ***Buford v. H&R Block, Inc.***, 168 F.R.D. 340, 355 (S.D.

Ga. 1996) (quoting Miller, *An Overview of Federal Class Actions* 48); **Hewlett v. Premier Salons Intern., Inc.**, 185 F.R.D. 211, 219 (D. Md. 1997).

"In determining whether the predominance standard is met, courts focus on the issue of liability." **Zapata v. IBP, Inc.**, 167 F.R.D. 147, 165 (D. Kan. 1996) (citing **Gold Strike Stamp Co. v. Christensen**, 436 F.2d 791, 796 (10th Cir. 1970); **United Telecommunications, Inc. Sec. Lit.**, 1992 WL 309884, *3 (D. Kan. 1992)). If the liability issue is common to the class, common questions are held to predominate over individual ones. Where, however, the issue of liability turns on something peculiar to the individual plaintiffs, such as the plaintiffs' responses or states of mind, then common questions have been held not to predominate. **Hewlett,** *supra* at 220.

As mentioned above, Defendants combined their arguments regarding the commonality and predominance requirements in their Memorandum in Opposition. (*See* Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 13-21). The Court addressed each of Defendants' contentions at length above and found that the less demanding commonality requirement had been satisfied. As stated above, there are two primary issues common to the entire putative class: (1) whether it was a consistent practice of Defendants to pay involuntarily discharged employees on the Friday following the end of the pay period regardless of whether they were terminated for cause; and (2) whether Defendants failed to pay liquidated damages or statutory interest to involuntarily terminated employees whom Defendants failed to timely pay under the WPCA.

The Court finds that the question of liability is common to the entire class. If the Defendants utilized a consistent practice of paying involuntarily terminated employees

the Friday following the end of the pay period even though they were entitled to their final wages 72 hours after their termination, then this practice applied to all of the former employees included in the putative class. Similarly, if Defendants failed to pay liquidated damages and statutory interest to involuntarily terminated employees who were not timely paid under the WPCA, then this practice applied to all former employees included in the putative class. As discussed above, the Court rejected Defendants' contention that individualized factual inquiries of each involuntarily terminated employee will be required to answer the common questions. Similarly, the issue of liability does not turn on these alleged minor differences among involuntarily terminated employees. Accordingly, the Court finds that the question of liability is common to the entire class and the common issues of fact and law predominate over any individual issues.

While the Fourth Circuit has held that the need for individualized proof of damages may defeat predominance where proof of damages is essential to liability, *Lienhart*, *supra* at 147 (citing *Windham v. American Brands*, 565 F.2d 59, 66 (4th Cir. 1977)), "[i]f the computation of damages, following a ruling in favor of the class is largely a mechanical task, then the existence of individualized claims for damages seems to offer no barrier to class certification." *Hewlett*, *supra* at 220; *see also* *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 428 (4th Cir. 2003) (the need for some individualized proof of damages after the liability stage will not defeat class certification and "courts usually require individual proof of the amount of damages."). As Plaintiff explained in her Memorandum of Support, "determining the actual damages for each individual class member will involve only a simple mathematical or formula computation

based upon the payroll records produced in the case." (Pl.'s Mem. in Supp. of Mot., ECF No. 103 at 11). The Court agrees. Based upon the foregoing, the Court finds the predominance requirement to be satisfied.

The superiority requirement ensures that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). Among the factors a district court should consider in deciding whether a class action meets these two requirements are:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

**Thorn**, supra at 319.

The Court does not agree with Defendants' contention that the class action would not be efficient due to the need for "mini-trials" on each class member's liability and Defendants' individualized defense. (Defs.' Mem. in Opp'n to Pl.'s Mot., ECF No. 117 at 22). The Court also rejects Defendants argument there is no impediment for putative class members to pursue individual lawsuits because attorneys' fees are available to prevailing plaintiffs under the WPCA. (Id.).

Here, a consideration of superiority factors in the context of the instant case weighs in favor of certification. Given the cost of litigation relative to any likely recovery, the Court finds it unlikely that the majority of putative class members would have any interest in maintaining a separate action. The Court is not aware of any litigation

concerning the instant controversy already commenced by or against members of the putative class. The Court finds it desirable to concentrate the litigation in this forum, where a large number of putative class members presumably reside. Finally, despite Defendants contention that individualize determinations render the class unmanageable, this Court finds it unlikely any difficulties will arise other than the typical issues of language of the notice and provision of the notice to class members. Accordingly, this Court finds the superiority requirement to have been satisfied.

Based upon the foregoing analysis, the Court **FINDS** that Plaintiff has met the requirements for class certification pursuant to FED. R. CIV. P. 23(a) and 23(b).

## III. <u>NOTICE</u>

Plaintiff shall submit a proposed notice to potential class members for the District Judge's approval within fourteen (14) days of the entry of this Report and Recommendation and Defendants shall file any objections thereto within fourteen (14) days thereafter.

## IV. <u>CONCLUSION</u>

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Rule 23 Class Certification [ECF No. 102] after review of the Notice and objection thereto as discussed above.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to

the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); **Thomas v. Arn**, 474 U.S. 140 (1985); **Wright v. Collins**, 766 F.2d 841 (4th Cir. 1985); **United States v Schronce**, 727 F.2d 91 (4th Cir. 1984), **cert. denied**, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** February 24, 2014

_/s/James E. Seibert_
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE